HUNT *v.* STREET *et al.*

(*Knoxville,* September Term, 1944.)

Opinion filed January 6, 1945.

WILKERSON & WILKERSON and CHAS. C. MOORE, all of Chattanooga, for complainant.

WHITAKER, HALL, HAYNES & ALLISON, of Chattanooga, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his original bill in the Chancery Court of Hamilton County for the purpose of winding up the partnership business of complainant Ben F. Hunt and defendant T. G. Street who had been engaged in the profession of architecture under the partnership name of R. H. Hunt Company, and to enjoin the defendants from using the said partnership name. The cause was set for hearing on bill and answer. The Chancellor, after a careful review of the record, in an oral opinion correctly stated the issues presented under the pleadings as follows:

"There are two real questions involved in this cause at this time, the others being of little importance as the record stands. The first is, shall an injunction issue prohibiting the defendants from using the name of 'R. H. Hunt Company' on their letterheads, office doors, or in any other way? The next question is, whether or not the name 'R. H. Hunt Company' is an asset of the old partnership which is salable."

While a temporary injunction was granted after a notice to show cause why it should not be so granted, it was not continued in force pending an appeal to this Court. It appears however that the parties have been in no way prejudiced by this action of the Chancellor and for this reason the assignment of error bearing upon it need not be considered. The learned Chancellor decided that the complainant was entitled to such an injunction and that the name of the old partnership was "a partnership asset" and that "it is salable." It was further decided, "The bill prays for a receiver, and a receiver will be appointed and directed to sell the firm name of R. H. Hunt Company to the highest and best bidder for cash,

and this will be done by advertisement once a week for four consecutive weeks in some paper published in Chattanooga."

Both complainant and defendants excepted to certain portions of the decree and prayed an appeal to this Court. Complainant has filed three assignments of error. Since we have pretermitted the question raised in the third assignment, it will be omitted. The first and second assignments are as follows:

1. The Chancellor committed reversible error in holding and decreeing that the firm name of R. H. Hunt Company, under which complainant and defendant, T. G. Street, conducted their partnership business, as architects, before and up to dissolution of said partnership, was a salable asset of said partnership and decreeing its sale at public outcry, for cash and to the highest bidder.

2. The Chancellor should have found, held and decreed that said partnership of complainant and defendant Street was a professional partnership; that the reputation of said partnership, symbolized by its name R. H. Hunt Company, depended upon the individual skill of its members, Ben F. Hunt and T. G. Street, had no good will to be distributed as a firm asset on its dissolution and, therefore, no formal sale or transfer thereof could be made on dissolution of the partnership, and he committed reversible error in not so holding and decreeing.

The defendants assigned the following error:

"The Court erred in holding that the complainant was entitled to an injunction enjoining defendants from using the name R. H. Hunt Company."

Before discussing the legal questions raised in the foregoing assignments of error, it is necessary to state the pertinent facts found in the record. R. H. Hunt began the practice of architecture in Chattanooga, Tennessee,

about fifty years ago. He was a brother of Ben F. Hunt, the complainant, who began the practice of architecture with his brother in 1903, or forty years ago. About twenty years ago defendant T. G. Street married the only daughter of R. H. Hunt and two years later he was brought into the firm by his father-in-law. It thus appears that the partnership was composed of R. H. Hunt, Ben F. Hunt, and T. G. Street, and that they, individually and collectively, maintained the good name of the partnership "R. H. Hunt Company". The record fails to show when R. H. Hunt Company was formed. In the latter part of 1936 R. H. Hunt became gravely ill and on December 31, 1936, he caused a written agreement to be prepared which he signed. This partnership agreement was never signed by complainant Ben F. Hunt and the defendant T. G. Street, but they operated under it in accordance with its terms from December 31, 1936, until the partnership was dissolved on January 31, 1944. The said R. H. Hunt died in May, 1937, about five months after he signed the above mentioned articles of partnership. The said partnership agreement recites: "The parties hereto have for some time been operating a partnership for the practice of architecture under the name of R. H. Hunt Company, but said parties have never entered into a formal agreement of partnership. The informal agreement heretofore existing is hereby abrogated and the following partnership agreement is this day entered into between the above mentioned parties in lieu thereof." The substance of this agreement is to the effect that the name "R. H. Hunt Company" shall continue as the name of the partnership; that the assets of the old firm shall become the property of the firm under the new articles of agreement, including "good will"; that on dissolution each partner shall be entitled to one

third of the partnership assets; that each shall share in one third of the profits and be liable for one third of the losses; that upon the death of any partner the firm shall continue as between the surviving partners; that for a period of three years after the death of any partner the net income shall be paid one third to each surviving partner and the assignee of a deceased partner, after paying $3600 annual salary to the surviving partners.

The agreement clearly contemplated giving the right of succession to a partnership interest to heirs of a deceased member. It appears that Mr. R. H. Hunt died about five months after he had signed the foregoing instrument. His widow, Mrs. Katherine DeG. Hunt, and his daughter, the wife of Thomas G. Street, succeeded to his interest. The partnership thus continued from May, 1937, until its dissolution on January 31, 1944.

Complainant rented the firm's quarters in the James Building for use by himself for the practice of architecture under the name "B. F. Hunt Associates". The defendant Street undertook to rent the same space on the following day for the use of a new partnership which he had formed or was forming.

The new partnership that was formed by Thomas G. Street was composed of himself, W. C. Caton, who had been connected with the old partnership, and Katherine DeGeorgis Hunt, widow of R. H. Hunt. This firm opened offices in the Hamilton National Bank Building under the old partnership name of R. H. Hunt Company. In an effort to settle the partnership affairs there was a disagreement as to the use of the old name as well as its value. Street proposed that either Ben F. Hunt or himself, place a valuation on the name and give to the other the right to buy or sell the good will and name at fifty

per cent of the valuation so fixed. Hunt declined, insisting that neither one should use the name.

It thus appears that Street, Caton, and Mrs. Katherine DeG. Hunt entered into a limited partnership as architects under the old firm name and in competition with complainant in the same locality.

We are here presented with this important question: Is the name of a well known firm of architects a part of its assets, and is it salable? At the outset it must be conceded that architecture is a profession. It differs from other professions, such as medicine and law, in only one particular, to-wit, the architect may solicit business, while the others are prohibited from so doing. Architecture calls for the highest skill in designing great buildings, and engineering skill in erecting them according to plans and specifications. In the instant case both complainant Ben F. Hunt and the defendant Thomas G. Street had been for a number of years connected with R. H. Hunt Company; each had made contributions to its standing and reputation, as well as the founder R. H. Hunt. Now, upon a voluntary dissolution of the partnership, may one of them continue in business as an architect under the original partnership name to the disadvantage and prejudice of the other? Complainant insists in response to the foregoing that "upon dissolution of the partnership of R. H. Hunt Company, composed of complainant and defendant Street, they remaining in competition in Chattanooga, there was no good will left. It was extinguished as a salable asset of the dissolved partnership."

In support of this contention reference is made to 24 Am. Jur., 805, sec. 5, and also to 40 Am. Jur., 316, sec. 271 wherein it is said: "The general rule is that a professional partnership the reputation of which depends on the in-

dividual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution. Therefore, no forced sale or transfer can be made of the good will of such a partnership on a termination of the firm by mutual assent.''

The foregoing rule which seems applicable to the instant case was followed by this Court in *Slack* v. *Suddoth,* 102 Tenn. 375, 52 S. W. 180, 45 L. R. A. 589, 73 Am. St. Rep. 881. In that case the facts were in all respects similar to those now before us. The question was there squarely presented as to the sale value of ''good will'' as represented by the name of a professional partnership. It was held, Mr. Justice Wilkes speaking for the Court, 102 Tenn. at page 378, 52 S. W. at page 181, 45 L. R. A. 589, 73 Am. St. Rep. 881: ''Accordingly, it is insisted that there is no such thing as good will attaching to professional partnerships. Certainly, there can be no forced sale or transfer *in invitum* of such good will, so far as it is based upon professional reputation and standing, such as arises from the skill of physicians, dentists, attorneys, etc., whatever may be done as to such good will as arises out of location.''

Able counsel for defendants have cited a number of cases involving the sale of good will of commercial partnerships, as well as professional partnerships, where there is a restrictive clause against the seller re-entering business in competition with the buyer. While several of these cases are in some respects analogous to the instant case, the rule applied should not be considered as controlling the instant case. It was fully recognized in *Slack* v. *Suddoth, supra,* that the good will of a business, or of a professional name, might be the subject of a voluntary sale. It was there said, '' 'Good will' implies

something gained by consent, *not something realized by force or coercion.*" (Italics ours.) Cases are there cited in which contracts of sale by attorneys and physicians were sustained, but in all these cases, as was pointed out, there was a voluntary sale and an obligation not to enter into competition with the purchaser.

 In Volume 38, C. J. S., Good Will, sec. 3, p. 952, it is said: "*Business or profession dependent on personal qualities of owner.* It has frequently been held that good will does not adhere to a business or profession dependent solely on the personal ability, skill, integrity, or other personal characteristics of the owner", citing a number of cases.

 In *Mandeville* v. *Harman,* 42 N. J. Eq. 185, at page 193, 7 A. 37 at page 40, the Court, in discussing a question similar to the one now before us, used the following language: "Professional skill, experience, and reputation are things which cannot be bought or sold. They constitute part of the individuality of the particular person, and die with him." See also *In re Caldwell's Estate,* 107 Misc. 316, 176 N. Y. S. 425; *Magee* v. *Pope,* 234 Mo. App. 191, 112 S. W. (2d) 891. We think the foregoing statement is equally applicable to the profession of architecture, and the good will of a group of persons so engaged must of necessity terminate upon the voluntary dissolution of the partnership. This must be true, since the organization that built it no longer has any existence.

The insistence of complainant that "good will" as symbolized by the name "R. H. Hunt Company" has been extinguished by reason of the voluntary dissolution of the partnership, resulting in competition between himself and the defendant Street, appears to be wholly inconsistent with the prayer for an injunction to restrain the sale of the name as a partnership asset. If all the value

in the name is extinguished, then there is nothing to sell. The Court cannot be expected to do an idle thing. It is not important to complainant that the Court enjoin a former partner from using a name that has at most only a nominal value; nor can we see wherein the complainant will be injured if such partner elects to carry on a competitive business or profession under such a name. The complainant has not seen fit to use the old firm name. On the contrary, he has elected not to use it. If the value of R. H. Hunt Company as a trade name was not impaired, if not destroyed, by the dissolution of the partnership, there can be little doubt that competition between the former partners would render it worthless as an asset. It could be brought about by fair and legitimate advertising to the effect that the former partnership is out of business and the individual members thereof have gone their several ways and set up a separate business of their own. In these circumstances each member would carry with him into his new and separate undertaking so much of the good will of the old partnership as his known ability and integrity might justify in the public mind. We cannot doubt that upon the dissolution of this partnership the fact became known, or was made known by publication, in Chattanooga and immediate vicinity. This being true, we fail to see how the old partnership name could have any meaning, much less value, in the minds of persons who might desire the services of a capable architect.

In conclusion, it should be said that the complainant Ben F. Hunt, in renting the offices which R. H. Hunt Company had occupied for years, for his own individual use as an architect, took advantage of his partners and in so doing secured for himself the old firm location which was about the only thing that remained of the old part-

nership that had any value. We are therefore of opinion that the issue now before us has become largely moot. Since the complainant has seen fit not to use the name, he should not complain that the defendant has, for reasons satisfactory to himself and his associates, elected to use it.

It results that the decree of the Chancellor directing the advertisement and sale of the name R. H. Hunt Company at public outcry is reversed. The injunction granted by the Chancellor is dissolved, and the cause is remanded for such further orders as may be necessary to wind up the business of the partnership. The costs of the appeal will be equally divided between complainant and defendants.